ROLLA CARR et al., Plaintiffs, Appellees, v. MAHASKA COUNTY BANKERS ASSOCIATION et al., Defendants, Appellees; TAINTOR SAVINGS BANK, Defendant, Appellant.

No. 43641.

OCTOBER 27, 1936.

McCoy & McCoy, for plaintiffs, appellees.

Devitt, Eichhorn & Devitt, for defendants, appellees.

Palmer & Spencer, for appellant.

RICHARDS, J.—On January 10, 1935, defendant Farmers Savings Bank of Leighton, Iowa, in Mahaska County, was

robbed. Plaintiffs discovered and furnished information that led to the arrest and conviction of the offenders. In so doing plaintiffs relied upon an offer of reward which they claim had been made for such information by the Mahaska County Bankers Association. This action at law was brought against the association and several banks located in Mahaska county, alleged members of such association, to recover the amount of the reward. A jury being waived the case was tried to the court and a judgment was entered for $1,000 with interest and costs against three of the defendant banks, including the Taintor Savings Bank, the sole appellant herein.

There are two assignments of error. The first is that the trial court erred in overruling appellant's motion for a directed verdict and to dismiss, made at the close of plaintiffs' evidence. The second assignment is that the court erred in overruling the same motion when later renewed at the close of all the testimony. The motion as originally made, and as renewed, is based on the grounds that the evidence failed to show that the Mahaska County Bankers Association was in existence on January 10, 1935, the date of the robbery, and failed to show that appellant was a member of such association on said date and failed to show that appellant had any offer of reward posted on its premises on said date or at any other time.

 Appellant contends it is entitled to a reversal if the court erred in overruling the motion at the close of plaintiffs' testimony, even if, when afterwards the motion was renewed at the close of all the testimony, there was then sufficient competent evidence to establish the essential matters to prove which there may have been a lack of evidence at the close of plaintiffs' testimony. The practice of filing motions for directed verdicts has become a well recognized part of our procedure, and appellees raise no question as to the propriety of the motion as made in this case. But the province of such motions is to expedite, rather than to impede, and where plaintiff by proper evidence makes a good case, this court does not send it back for a new trial because it was vulnerable to the objection that the evidence was deficient when plaintiff first submitted the case. Cushman v. Carbondale Fuel Co., 116 Iowa 618, 88 N. W. 817. Appellant did not stand upon its motion when it was overruled at the close of plaintiffs' evidence but proceeded with the introduction of its own testimony. At the close of all the evidence the motion was renewed,

and if then there was in the record sufficient competent evidence to establish plaintiffs' case the motion when so renewed was rightly overruled and the original ruling thereon does not furnish grounds for reversal. For these reasons we confine ourselves to consideration of the ruling on appellant's motion when renewed.

The Mahaska County Bankers Association was an unincorporated voluntary association, having no such legal existence that it could sue or be sued. There is in the record, known as exhibit A, a printed poster which begins with the words: ''$1000 Reward for Bank Robbers and Bank Burglars Operating in this County.'' The text then states: ''This bank is a member of the undersigned County Bankers Association, and has subscribed to the constitution and by-laws of that association.'' Among other things the poster then sets out that the said association ''hereby agrees to and does offer a reward of $1000.00 to be paid for the capture or information leading to the arrest and conviction of robbers or burglars robbing * * * any member bank in this county,'' and in event of capture dead or alive the reward to be paid immediately. The poster further states: ''This bank is protected by a Local Armed Vigilance Committee composed of Special Deputy Sheriffs'' and that the association is working with the State Bureau of Investigation, the local authorities and the State Bankers Association. The date of the origin of the poster is not clear, but from the record we infer it had been in existence for some years prior to 1930. The record also shows that it had been posted by various banks in Mahaska county in their banking houses.

We will consider first the ground of appellant's motion to the effect that the evidence failed to show that appellant had any offer of reward posted on its premises on January 10, 1935, or at any other time. The evidence as to this matter is found largely in the testimony of the cashier of appellant bank. As appellant's witness he stated that appellant became a member of the Mahaska County Bankers Association and that appellant posted in its bank a poster identical with exhibit A. It is conceded in argument by appellant that such posting would make appellant the offeror of the reward, this being on account of such posting amounting to a representation that there was a principal making the offer, whereas the purported principal, the association, having the characteristics already noted, was not an entity that

could sue or be sued. To avoid any liability on account of such posting and membership in the association, appellant offered the further testimony of this witness that in December 1931 or January 1932 this cashier removed the poster from the lobby of the bank and threw it into the wastebasket. The cashier also testified that at the same time he turned down a sight-draft drawn by the association for dues and that no dues were paid thereafter. It is to be inferred from the evidence that this occurrence was several years subsequent to the time appellant had become a member of the association and had posted the offer of reward. Whether there were any dues demanded or to be paid *subsequent* to the sight-draft does not appear. The cashier further testified that he never attended any meetings of the association during the entire ten years. On cross-examination he stated that appellant bank at no time passed any resolution of withdrawal from the association and that there were no minutes upon the minute books showing any resolution offered by the directors or stockholders for any such withdrawal. Upon this evidence appellant contends that the offer of reward was revoked by appellant bank, and that at the time of and following the robbery there was outstanding no offer of reward of which appellant was the offeror. While this proposition is not strictly within the grounds assigned in the motion, both parties have treated it as if it were and we will do likewise.

Revocation of an offer of reward is ordinarily within the power of the offeror at any time before it is accepted by performance. Appellant says the facts disclosed by the testimony of its cashier conclusively established that the offer made by the posting by appellant was revoked. Appellees challenge such conclusion and claim that the record is such that the trial court could properly find as a fact that as to plaintiffs there had been no revocation, nor any communication to plaintiffs of any alleged revocation.

■■■ The authorities as to what acts may constitute an effective revocation of an offer of reward, made to the public, are not numerous. In Shuey v. U. S., 92 U. S. 73, 23 L. Ed. 697, an offer of reward had been made to the public by a published proclamation. Subsequently there was a revocation by similar publication. The plaintiff suing for the reward knew of the offer but claimed to be innocent of knowledge of the publication of the revocation. The opinion held that the offer of the reward not

having been made directly but by manner of a published proclamation, the plaintiff should have known it could be revoked in the manner in which it was made. In Sullivan v. Phillips, 178 Ind. 164, 98 N. E. 868, 869, Ann. Cas. 1915B, 670, the rule as to the sufficiency of a revocation is thus stated:

"The offer of a reward can be revoked only in the manner in which it was made, or in some other manner which will give the revocation like publicity as the offer. Shuey v. U. S., 92 U. S. 73, 23 L. Ed. 697; 9 Cyc. 289, and note 27."

In discussing the terminating of offers of reward, the authorities also look upon the intent of the offeror as an element worthy of consideration. Such intent is often inferred from the end or purpose to be gained by the offeror, where the nature of the offer and the surrounding circumstances indicate such purpose. Thus in Smith v. Lancaster City, 156 Pa. 362, 26 A. 1067, 1069, 21 L. R. A. 691, the defendant city by resolution had offered a reward for the apprehension of persons guilty of arson, the property of citizens and the welfare of the city being at the time in danger from fires that were incendiary. In considering the question of the termination of this offer the court said: "This (the offer of reward) was intended as a remedy for an existing evil, but when its purpose was accomplished it became *functus officio*. It was not a permanent law of the municipality, but a temporary order, to meet a temporary necessity." The court held that for a reasonable time to accomplish its original purpose the offer must be binding, but beyond such reasonable time for accomplishment of such purpose it cannot be. In Sullivan v. Phillips, supra, 178 Ind. 164, 98 N. E. 868, Ann. Cas. 1915B, 670, the offer of reward was for the discovery of certain books of a corporation of which the offeror had been the president. The offer was made orally while the offeror was being examined as a witness in a proceeding involving the corporation. Sometime after the proceeding had been completed the plaintiff discovered the books and demanded the reward. The offeror claimed the offer was made for discovery and production of the books at the hearing and that a subsequent discovery was not a performance of the offer as made. But the court took into consideration the circumstances and evident incentive of the offer. The opinion recites that the offeror had been president of the corporation and that the evidence showed that it was not so

much the actual presence of the books in which appellant was interested as the clearing of himself from any imputation of responsibility for their disappearance. It was held that plaintiff had complied with the offer and was entitled to recover and that secret intentions will not be let in to show an intent different from that expressed. In the case at bar it is quite evident that the purpose of the offer was not the discovery of perpetrators of crimes already committed. The offer did not delve into the past. On the contrary its terms were contemplative. They had to do with the future, and with the robbing of some bank in Mahaska county, should it some day happen. The lessening in the future of likelihood of such crimes must be said to be the paramount incentive and purpose of the offer. The trial court could well have so found, and in determining the sufficiency of the alleged revocation, could have taken into consideration that from this nature of the offer of reward the public could reasonably assume that the offer once made was intended to continue into the future to accomplish the evident purpose to which we have referred. And if from the nature of the offer the public could in reason assume that continuity was an intended element of the offer, then it would seem necessary to abandon appellant's contention that the element of continuity must have been additionally given to the offer by uninterrupted posting. Such lack of an uninterrupted or continuous posting is the ultimate fact on which appellant must rely to establish revocation, because to the public could be imputed no knowledge that the cashier turned down the sight-draft nor that the poster was thrown into the wastebasket, and these incidents of self-serving testimony must be rejected so far as chargeable to the knowledge of the public on the question of a revocation. There seems no avoidance of the conclusion that appellant did not effectively revoke the offer in the manner in which it was made, as perhaps by posting in its bank a notice of revocation, nor can it be said there was a revocation in any other manner that gave the alleged revocation like publicity as the offer. For aught that appears in the record there was warrant for a finding by the trial court that the public could rightfully assume that the offer remained in force at the time of the robbery.

▮▮▮ As stated appellant's liability grows out of its representations that there was a principal making the offer, and it is because of the nonexistence, as a legal entity, of such principal

that the liability attaches. It would seem therefore to be immaterial as set out in the motion whether the voluntary association still existed at the time of the robbery or whether appellant was a member thereof.

Neither the constitution and by-laws of the association nor any agreements between the appellant and such association are in evidence and there is not before us in this case any question of appellant's liability by reason of any specific undertaking it may have entered into. Nor has it been necessary to consider the question whether the removal of the poster was an individual act of the cashier or whether it was the act of the appellant bank. No claim was made in the trial court, nor on this appeal that a reasonable length of time for acceptance of the offer had expired.

The motion for directed verdict and to dismiss was properly overruled and the judgment below is affirmed.—Affirmed.

PARSONS, C. J., and HAMILTON, MITCHELL, ANDERSON, DONEGAN, ALBERT, and KINTZINGER, JJ., concur.